IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Crim. No. 12-00133 JMS (02) |
| | ) (Civ. No. 16-00070 JMS-BMK) |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT |
| vs. | ) LARRY LEE'S MOTION FOR |
| | ) RELEASE ON BAIL, DOC. NO. 208; |
| LARRY LEE,           (02), | ) AND GRANTING GOVERNMENT'S |
| | ) MOTION TO STAY 28 U.S.C. § 2255 |
| Defendant. | ) PETITION |
| | ) |
| _____ | ) |

**ORDER GRANTING DEFENDANT LARRY LEE'S MOTION FOR RELEASE ON BAIL, DOC. NO. 208; AND GRANTING GOVERNMENT'S MOTION TO STAY 28 U.S.C. § 2255 PETITION**

**I.  INTRODUCTION**

Defendant Larry Lee ("Defendant") has filed a Motion for Release on Bail, Doc. No. 208 ("Motion for Bail"), pending the resolution of his claim under 28 U.S.C. § 2255 that his sentence is unconstitutional under *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Descamps v. United States*, 133 S. Ct. 2276 (2013).  As announced at the March 7 and 11, 2016 hearings, the Motion for Bail is GRANTED.  Furthermore, given Defendant's agreement at the March 7, 2016 hearing, the government's oral Motion to Stay the § 2255 Petition is GRANTED, pending decisions by the Supreme Court in *Welch v. United States*, No. 15-6418

(U.S.) (cert. granted Jan. 8, 2016) and *Mathis v. United States*, No. 15-6092 (U.S.) (cert. granted Jan. 19, 2016).

## II. BACKGROUND[1]

Defendant was convicted on November 16, 2012, for violations of 18 U.S.C. § 922(j) (possession of a stolen firearm); 18 U.S.C. § 641 (receiving stolen government property); and 18 U.S.C. §§ 922(g)(1) & 924(e) (felon in possession of a firearm subsequent to three convictions for violent felonies). Doc. Nos. 153, 174. Defendant's conviction was affirmed on direct appeal on November 10, 2014. Doc. No. 200.

Under the Armed Career Criminal Act ("ACCA"), if a defendant is convicted of a firearms offense and has three or more prior convictions for "a violent felony or a serious drug offense, or both," the defendant is subject to a mandatory minimum fifteen-year sentence. 18 U.S.C. § 924(e)(1). A "violent felony" is defined for these purposes as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --

---

[1] The court sets forth only the background necessary to put these rulings into proper context.

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2).  The first clause in § 924(e)(2)(B)(ii) ("is burglary, arson, or extortion, involves use of explosives") is often called the "enumerated offense clause."  The other § 924(e)(2)(B)(ii) clause ("or otherwise involves conduct that presents a serious potential risk of physical injury to another") is referred to as the "residual clause."

      Among Defendant's prior state-court convictions are multiple convictions for first-degree burglary under Hawaii Revised Statutes ("HRS") § 708-810.  Doc. No. 180.  Given those prior burglary convictions, the court sentenced Defendant on March 8, 2013 to a mandatory fifteen-year prison term under the ACCA.  Doc. No. 174, Judgment at 3.  When Defendant was sentenced, it did not matter for sentencing purposes whether Defendant's prior burglary convictions were "violent felonies" under the enumerated offense clause or the residual clause.  The court and the parties generally understood or assumed that first degree burglary under HRS § 708-810 fit within one or the other clause when

3

applying the general approach derived from *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). It was unnecessary for the parties to raise the issue, and the court made no specific finding as to which clause (or both) applied. On June 26, 2015, however, the Supreme Court issued *Johnson*, which invalidated the ACCA's residual clause as unconstitutionally vague. 135 S. Ct. at 2557-58.

Given *Johnson*, and applying the "modified categorical approach" as explained by the Supreme Court in 2013 in *Descamps* (which elaborated on the *Taylor/Shepard* methodology) and subsequent Ninth Circuit caselaw[2] to determine whether a prior crime qualifies under the ACCA, Defendant filed his § 2255 petition seeking re-sentencing. Doc. No. 205. The petition argues that absent the residual clause, a first-degree burglary conviction under HRS § 708-810 does not qualify as a burglary under the enumerated offense clause and is thus not a "violent felony" under the ACCA. *See* Doc. No. 207. If so, Defendant is not an "armed career criminal," and is not subject to the fifteen-year mandatory minimum. The argument turns in part on whether *Johnson* applies retroactively to ACCA cases on collateral review -- that is, whether *Johnson* is a "substantive rule

---

[2] *See, e.g.*, *Almanza-Arenas v. Lynch*, ___ F.3d ___, 2016 WL 766753 (9th Cir. Feb. 29, 2016) (en banc) (as amended); and *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014).

of constitutional law" such that courts are required to give retroactive effect to that rule in a properly-brought ACCA case on collateral review. *See, e.g.*, *Montgomery v. Louisiana*, 136 S. Ct. 718, 729 (2016) (discussing *Teague v. Lane*, 489 U.S. 288 (1989)).

The Supreme Court is considering this exact retroactivity issue in *Welch*, which is scheduled for oral argument on March 30, 2016. And in *Welch*, the United States has taken the position that *Johnson does* indeed apply to ACCA cases on collateral review. *See* Brief for the United States, *Welch v. United States*, 2016 WL 537542, at *17 (U.S. Feb. 9, 2016) (No. 15-6418) ("*Johnson* applies to cases on collateral review because it is a substantive decision."). Further, in *Mathis*, the Supreme Court is also considering the methodology used to determine whether a prior conviction qualifies under the ACCA. *Mathis* is scheduled for oral argument on April 26, 2016. The Supreme Court's decisions in *Welch* and *Mathis* will likely control the disposition of Defendant's § 2255 petition. Defendant now seeks bail pending the resolution of his § 2255 petition. Doc. No. 208.

///

///

///

## III. **DISCUSSION**

A. **The court has power to grant bail pending its decision in a § 2255 proceeding in extremely limited circumstances**.

The government first argues, based on an absence of binding Ninth Circuit precedent, that this court lacks power to grant bail before deciding a § 2255 petition. And it is undisputed that "[t]he Bail Reform Act does not apply to federal prisoners seeking postconviction relief." *United States v. Mett*, 41 F.3d 1281, 1282 (9th Cir. 1994). "Nevertheless, there is abundant authority that federal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their cases, but a power to be exercised very sparingly." *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985) (citing cases from the Second, Fifth, Sixth, and Tenth Circuits); *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001) (reaffirming that "the federal courts have inherent authority to admit to bail individuals properly within their jurisdiction"); *United States v. Kelly*, 790 F.2d 130, 139 (D.C. Cir. 1986) (same).

The court recognizes that the Ninth Circuit has not specifically decided the question. *See In re Roe*, 257 F.3d 1077, 1080 (9th Cir. 2001) (vacating a district court's bail order for lack of exceptional circumstances, assuming, but specifically not deciding, that a district court otherwise has

authority to order the release of a state prisoner pending resolution of a petition under 28 U.S.C. § 2254). The court agrees, however, that "*all* of the other circuit courts that have decided the issue have concluded that the district court indeed possesses such authority." *Hall v. S.F. Superior Court*, 2010 WL 890044, at *2 (N.D. Cal. Mar. 8, 2010) (citing cases). And this inherent power is especially apparent where, as here, the court is reviewing its *own* criminal Judgment under § 2255 -- not a petition under § 2254 as to a state prisoner, which entails larger considerations of comity and judicial federalism.[3]

       This power is "necessary to make the habeas remedy effective," *Mapp*, 241 F.3d at 226, consistent with a statutory mandate to decide habeas petitions "as law and justice require." 28 U.S.C. § 2243. "[H]abeas corpus is, at its core, an equitable remedy," *Schlup v. Delo*, 513 U.S. 298, 319 (1995), and is to "be administered with . . . initiative and flexibility." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). "[H]abeas corpus is not a static, narrow, formalistic remedy, but one which must retain the ability to cut through barriers of form and procedural mazes." *Brown v. Vasquez*, 952 F.2d 1164, 1166 (9th Cir. 1992) (as amended)

---

[3] This Order is limited to where a defendant has filed a § 2255 petition but the court has not yet ruled. The court expresses no opinion as to whether this inherent power extends to a pending § 2254 petition reviewing a state court conviction or sentence.

(quoting *Hensley v. Municipal Ct.*, 411 U.S. 345, 349-50 (1973) (internal quotation marks omitted)).

And so the court agrees (and believes that the Ninth Circuit would likewise agree), consistent with the reasoning of all circuits to consider the question, that "[i]n a § 2255 proceeding, 'the court's jurisdiction to order release as a final disposition of the action includes an inherent power to grant relief pendente lite, to grant bail or release, pending determination of the merits.'" *Kelly*, 790 F.2d at 139 (quoting *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969)).[4]

---

[4] The court is not relying on Federal Rule of Appellate Procedure 23 (concerning release of a prisoner in a habeas corpus proceeding), which applies where the district court has already ruled on a habeas petition and such a decision is on appellate review. Nevertheless, Rule 23 does contain the power for a district court to grant bail while a decision is "under review." Both Rule 23(b) (regarding "Detention or Release Pending Review of Decision Not to Release") and 23(c) (regarding "Release Pending Review of Decision Ordering Release") refer to "the court or judge rendering the decision [*i.e.*, the district court], *or* the court of appeals, *or* the Supreme Court" (emphasis added) as having the power to release a prisoner "on personal recognizance, with or without surety" while a habeas decision is under appellate review. Indeed, Rule 23 was enacted, at least in part, to *preserve* a *retained* district court power regarding bail, even while a decision is on review. *See Jago v. U.S. Dist. Ct., N. Dist. of Ohio*, 570 F.2d 618, 622-23, 625-26 (6th Cir. 1978) (analyzing history and origin of Rule 23, and explaining how Rule 23 preserves district court's bail power). Bail is generally a matter for district courts in the first instance. *Cf. O'Brien v. O'Laughlin*, 557 U.S. 1301 (2009).

Moreover, under Rule 23(b)(3), a district court could deny a habeas petition, but then grant bail while the denial is under review. If a district court has that power (where the petition has been found to *lack* merit), it makes little sense that it does not otherwise have the inherent power to grant bail before rendering a decision on the habeas petition (at least when the petition *does* appear to have merit).

But the court recognizes and appreciates that the power to grant bail pending review "is a limited one, to be exercised in special cases only." *Mapp*, 241 F.3d at 226. The power is to be exercised "only in unusual cases, or when extraordinary or exceptional circumstances exist." *Id*. (quoting *Ostrer v. United States*, 584 F.2d 594, 596 (2d Cir. 1978). It is "a power to be exercised very sparingly." *Cherek*, 767 F.2d at 337.

**B.     The court applies two primary factors.**

In making this bail determination in habeas proceedings, courts consider two primary factors -- exceptional/extraordinary circumstances and a high probability of success on the merits. *See, e.g.*, *Mett*, 41 F.3d at 1282 (citing *Land v. Deeds*, 878 F.2d 318, 318-19 (9th Cir. 1989)).[5] *Mett* and *Land* list these factors (with little or no accompanying discussion), in the disjunctive ("or"). *See id.* (recognizing that under Fed. R. App. P. 23, "this court has reserved bail for 'extraordinary cases involving special circumstances *or* a high probability of success'") (quoting *Land*, 878 F.3d at 318) (emphasis added). But other cases, addressing the issue in much more detail, apply a conjunctive test -- that is, *both* factors are necessary for granting bail. *See, e.g.*, *Landano v. Rafferty*, 970 F.2d

---

[5] Defendant also agrees that traditional bail factors such as the potential that a defendant will flee or pose a danger to the community must also be considered. Doc. No. 206, Def.'s Mot. at 4. Such factors were considered and addressed in court but will not be outlined in this Order.

9

1230, 1239 (3d Cir. 1992) (reasoning that "bail pending post-conviction habeas corpus review [is] available 'only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, *and* also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective") (emphasis added) (quoting *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974); *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986) (same); *Hall*, 2010 WL 890044, at *3 (requiring petitioner to meet both prongs). And requiring *both* prongs appears to be obvious -- as the government argues, "it makes no sense that exceptional circumstances alone . . . would be sufficient if the petitioner was *un*likely to succeed on the merits." Doc. No. 212, Gov't Mem. at 14.

In any event, because Defendant meets both factors, the court need not decide whether a strong showing of just one factor might suffice. Defendant has demonstrated both a high probability of success on the merits *and* the existence of extraordinary circumstances (and the court emphasizes that this is indeed a truly extraordinary set of circumstances).

Initially, there is a high probability of success on Defendant's claim that *Johnson* applies retroactively to his § 2255 petition. *See*, *e.g.*, *In re Watkins*, 810 F.3d 375, 377, 384 (6th Cir. 2015) (concluding, when authorizing the filing of

a second or successive § 2255 petition under § 2255(h)(2), that the petitioner had made a prima facie showing that "the Supreme Court has made *Johnson's* rule categorically retroactive to cases on collateral review"); *Price v. United States*, 795 F.3d 731, 734-35 (7th Cir. 2015) (finding that the petitioner has made a prima facie showing under § 2255(h) of success on a *Johnson* claim because "[t]here is no escaping the logical conclusion that the [Supreme] Court itself has made *Johnson* categorically retroactive to cases on collateral review"); *Montgomery*, 136 S. Ct. at 729 ("[T]he Constitution requires substantive rules to have retroactive effect regardless of when a conviction became final"). It seems clear that, by barring an enhanced ACCA sentence that was based on the residual clause, *Johnson* is substantive because it "prohibit[s] a certain category of punishment for a class of defendants because of their status." *Montgomery*, 136 S. Ct. at 729 (citation and internal quotation marks omitted).[6]

And applying *Descamps* as interpreted by existing Ninth Circuit precedent (*e.g.*, *Almanza-Arenas*, 2016 WL 766753, at *5; *Rendon*, 764 F.3d at 1083), it appears that Defendant was sentenced unconstitutionally. The court sentenced Defendant in 2013 under the ACCA with no specific finding as to

---

[6] To be clear, the court is not deciding that *Johnson* is indeed retroactive -- the Supreme Court in *Welch* has granted certiorari to decide that question. It appears, however, that Defendant has a "high probability" of success on that question.

whether his Hawaii burglary convictions qualified as violent felonies under the enumerated offense clause or the residual clause. That is, the court and parties assumed that those prior convictions fit under one or the other clause, or both (when applying the methodology derived from *Taylor/Shepard*). And if the court were to re-sentence Defendant now, under the methodology required in *Descamps*, Defendant has a high probability of succeeding on his argument that his HRS § 708-810 burglary convictions do not fit within the ACCA's enumerated offense clause.[7]

        Second, if *Johnson* is given retroactive effect, Defendant will likely have already served his full sentence upon a re-sentencing. Defendant's advisory non-ACCA guideline range would be 37 to 46 months (offense level 20, criminal history category II) under the sentencing guidelines. And, including good-time credits, Defendant has *already* spent approximately 56 months in custody. Doc. No. 212, Gov't Mem. at 3. It is thus likely that, if re-sentenced without an ACCA enhancement, Defendant would receive a sentence of time-served. This is certainly a factor when considering whether to grant bail. *See, e.g.*, *Landano*, 970

---

[7] Thus, the government's argument that *Descamps* (as opposed to *Johnson*) does not apply retroactively does not control. If the court were to re-sentence Defendant today applying *Johnson*, the court would apply current law regarding the categorical/modified categorical methodology (i.e., *Descamps*, as interpreted by Ninth Circuit precedent). The court would not apply *Johnson* based on the methodology that applied in 2013 before *Descamps*.

F.2d at 1239 ("[I]f bail were denied and the habeas petition were eventually granted, the defendant would already have served the sentence.").

What makes this situation extraordinary is the unique combination of several factors -- the likelihood that Defendant at the present time has already served a non-ACCA sentence, coupled with the unusual posture where the Supreme Court is now considering in *both Welch* and *Mathis* the issues likely to be dispositive in this § 2255 petition. *Cf. In re Johnson*, ___ F.3d ___, 2016 WL 762095, at *4 (11th Cir. Feb. 26, 2016) (holding a § 2255 petition in abeyance, pending *Welch*, reasoning that "[w]e think this case is extraordinary because of the convergence of four unusual circumstances," including that "[t]he only remaining question is whether [*Johnson*] should be retroactively applied," and where "the government has argued that the *Johnson* rule is retroactive, even though doing so favors petitioners' positions.").[8]  Although it is impossible to know exactly how the Supreme Court will resolve *Welch* and *Mathis*, if this court waits until final resolution of these issues by the Supreme Court *without* granting bail, Defendant will very likely have continued to serve an excessive sentence in the meantime. Combined with the high likelihood of success, a grant of bail pending the Supreme

---

[8] Although the government has not conceded retroactivity in this case, the government has done so -- indeed, has argued affirmatively for such a result -- to the Supreme Court in *Welch*.

Court's decisions (with adequate bail conditions) is an appropriate equitable remedy in this extraordinary situation.

Further demonstrating exceptional circumstances is that an alternative to granting bail would be to *grant* the § 2255 petition based on current law and re-sentence Defendant despite the Supreme Court having granted certiorari in *Welch* and *Mathis*. Doing so, however, would ignore the possibility that the Supreme Court could certainly decide *Welch* and *Mathis* together in a manner that would result in the denial of Defendant's § 2255 petition. Allowing the Supreme Court to decide these issues with certainty, rather than having this court predict the result, accords a proper respect for the Supreme Court in this unique posture.

Indeed -- recognizing that the grant of bail in these unique circumstances is a kind of compromise -- the government at the March 7, 2016 hearing moved orally for a stay of a decision on the merits of the § 2255 petition (pending decisions in *Welch* and *Mathis*) and Defendant agreed to such a stay. As the court indicated at the hearing, the government's request for a stay of a ruling on the merits is GRANTED.

///

///

///

## IV.  CONCLUSION

Defendant's Motion for Release on Bail, Doc. No. 208, is GRANTED.  Meanwhile, a decision on the merits of Defendant's § 2255 petition is STAYED, pending the Supreme Court's resolution of *Welch* and *Mathis*.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 11, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Lee*, Crim. No. 12-00133 JMS (02), Order Granting Defendant's Motion for Release on Bail, Doc. No. 208; and Granting Government's Motion to Stay § 2255 Petition